### AFFIDAVIT OF SPECIAL AGENT DAVID CIRILLI IN SUPPORT OF
### AN APPLICATION FOR CRIMINAL COMPLAINT

I, David Cirilli, state:

1.       I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Boston, Massachusetts Field Office.  Since joining the FBI in 2010, I have been assigned to squads that investigate economic crimes, including insider trading and other forms of securities fraud.

2.       I make this affidavit in support of a criminal complaint charging SONGJIANG WANG ("WANG") with conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371.  Specifically, as set forth below, I have probable cause to believe that, beginning no later than November 2013 and continuing through at least September 2015, WANG conspired with at least one other person to engage in an insider trading scheme pursuant to which WANG and at least one of his co-conspirators exchanged material nonpublic information regarding clinical trial data and results obtained from their respective employers, both biopharmaceutical companies, and purchased shares of those companies based on that material nonpublic information.

3.       The facts in this affidavit come from my personal involvement in the investigation and review of records, and information obtained from others, including other agents working on the criminal investigation as well as the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA").  In submitting this affidavit, I have not included each and every fact known to me about this investigation.  Rather, I have included only those facts that I believe are sufficient to establish probable cause.

1

**Certain Relevant Persons and Entities**

4.      WANG is a resident of Westford, Massachusetts.  Beginning in or about December 2011, WANG began working as Director of Statistical Programming for a Cambridge-based biopharmaceutical company, ("Pharm. Co. 1").

5.      Pharm Co. 1 develops products for cancer patients.  Pharm Co. 1's shares are traded on the NASDAQ Stock Market.

6.      Schultz "Jason" Chan ("Chan") is a resident of Newton, Massachusetts.  On or about August 17, 2015, Chan began working as the Director of Biostatistics at a different Cambridge-based biopharmaceutical company, ("Pharm. Co. 2").

7.      Pharm. Co. 2 develops products for patients with kidney disease.  Pharm. Co. 2's shares are traded on the NASDAQ Stock Market.

8.      On September 13, 2016, Chan was charged in a three-count indictment with securities fraud, in violation of Title 15, United States Code, §§ 78j(b) & 78ff and 17 C.F.R. §240.10b-5, based on his own trading in the securities of Pharm Co. 2 while in possession of material nonpublic information and also based on his tipping of WANG, who is identified in that indictment as Tippee-2.  See  United States v. Schultz Chan, 16-cr-10268-IT.

**Background**

2

9.      Before a pharmaceutical company can release a new drug, it must conduct clinical trials to determine whether the drug is safe and effective in providing treatment to patients. These trials generally are conducted in multiple phases.  According to publicly available data from the Food and Drug Administration ("FDA"), Phase 1 trials test the drug on a small group of people (20-100) to determine, among other things, its safety and a safe dosage range.   In Phase 2, the drug is given to a larger group of people (up to several hundred) to determine if it is effective and to further evaluate its safety.  In Phase 3, the drug is given to large groups of people to confirm, among other things, its effectiveness, its safety and to monitor any side effects.

<u>Pharm. Co. 1 Public Announcements</u>

10.      On or about November 26, 2013, Pharm Co. 1 publicly announced positive Phase 2 study results for one of its drug candidates, specifically, "121," ("Pharm Co. 1 November 26 Announcement").

11.      On or about December 13, 2013, Pharm Co. 1 publicly announced positive Phase 1 study results for another one of its drug candidates, specifically, "302," and further announced that, in light of the positive results from the Phase 1 study, the company was planning a Phase 2 study for the drug ("Pharm Co. 1 December 13 Announcement")**.**

12.      On or about May 1, 2014, Pharm Co. 1 publicly announced positive Phase 3 study results for a third drug candidate, specifically, "398" ("Pharm Co. 1 May 1 Announcement").

13.      In his position as Director of Statistical Programming, WANG had access to a restricted database that collected the foregoing clinical trial data.

14.     As an employee of Pharm Co. 1, WANG was subject to an insider trading policy, which provided that no employee may trade while in possession of material nonpublic information and that no employee was permitted to disclose material nonpublic information to others who might buy or sell securities on the basis of that information.

<u>Pharm Co. 2's Public Announcement</u>

15.     On September 8, 2015, Pharm Co. 2 publicly announced Phase 2 results for a new drug ("Pharm Co. 2 September 8 Announcement").  On September 9, the day after the announcement, Pharm Co. 2's share price increased 45%, from $7.81 (closing price on the September 8) to $11.36 (closing price on September 9).

16.     Chan had access to, and was aware of, the Phase 2 preliminary results before the public Pharm Co. 2 September 8 Announcement.  Chan was subject to an insider trading policy, which provided that no employee may trade while in possession of material nonpublic information and that no employee was permitted to disclose material nonpublic information to others who might buy or sell securities on the basis of that information.

**The Insider Trading Conspiracy**

17.     Beginning no later than November 2013 and continuing through at least September 2015, in the District of Massachusetts and elsewhere, SONGJIANG WANG, conspired with Chan to commit securities fraud, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of a national securities exchange, directly and indirectly, to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, to wit, shares of Pharm Co. 1 and Pharm Co. 2, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by:  (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon the purchase and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

Objective of the Conspiracy

18.     The principal objective of the conspiracy was to make money trading in the securities of Pharm Co. 1 and Pharm Co. 2 on the basis of material nonpublic information WANG and Chan obtained from their respective employers.

Manner and Means of the Conspiracy

19.     Among the manner and means by which WANG and Chan carried out the

conspiracy was the following:

a.     In advance of each of the Pharm Co. 1 November 26 Announcement, the Pharm

Co. 1 December 13 Announcement, and the Pharm Co. May 1 Announcement, WANG provided

Chan with material nonpublic information about the studies discussed in those announcements.

b.     Chan purchased shares in Pharm Co. 1 while in possession of the material

nonpublic information received from WANG.

c.     In advance of the Pharm Co. 2 September 8 Announcement, Chan provided

WANG with material nonpublic information regarding the study discussed in that

announcement.

d.     WANG purchased shares in Pharm Co. 2 while in possession of material

nonpublic information received from Chan.

Overt Acts in Furtherance of the Conspiracy

20.     On various dates between November 2013 and September 2015, WANG and

Chan committed the following overt acts, among others, in furtherance of the conspiracy and to

accomplish its objectives:

a.     On or about November 19 and November 21, 2013, less than one week before the

November 26 Pharm Co. 1 Announcement, Chan purchased 20,110 shares of Pharm Co. 1.

b.     Between December 3, 2013 and December 11, 2013, in the two weeks leading up

to the December 13 Pharm Co. 1 Announcement, Chan purchased 64,883 shares of Pharm Co. 1.

c.      On or about each of November 21, 2013 and December 2, 2013, WANG withdrew $4,000 and $6,000 respectively in cash from a checking account in his name.

d.      On or about December 5, 2013, WANG withdrew $13,000 in cash from a checking account in his name.

e.      On or about each of December 3 and December 6, Chan deposited $10,000 and $12,000 respectively in cash into a checking account in his name.  On each of December 3 and December 6, Chan transferred money from his checking account into a newly opened brokerage account in his name [acct xx7240] and used those proceeds to purchase shares of Pharm Co. 1 prior to the December 13, 2013 public announcement, as described in paragraph 20(b) above.

f.      On or about each of February 25, 2014 and February 26, 2014, WANG withdrew $6,000 and $7,000 respectively in cash from checking accounts in his name. Additionally, three withdrawals in the amount of $800 each occurred in one of the accounts on the previous day.

g.      On or about February 27, 2014, Chan deposited $19,800 cash into his bank account and then transferred $19,800 into acct xx7240.

h.      Between February 3, 2014 and April 28, 2014, Chan purchased 174,396 shares of Pharm Co. 1, including purchases made with the cash deposited into Chan's bank account on or about February 27, 2014.  Chan subsequently sold some of those shares, wired the funds to his bank account, and then wrote a check back to Wang.

7

i.      On or about August 28, 2015, less than two weeks before Pharm Co. 2's

September 8 Announcement, WANG's and Chan's cell phones exchanged text messages and

WANG purchased Pharm Co. 2 call-options, which gave him the right, but not the obligation, to

purchase Pharm Co. 2 shares at a later date for a specific price and thereby to profit from an

increase in share price. WANG also sold Pharm Co. 2 put options, which similarly allowed him

to profit in an increase in the price of Pharm Co. 2's shares.

j.      On various dates between August 31, 2015 and September 4, 2015, WANG

purchased an additional 20,440 shares of Pharm Co. 2.

### Conclusion

21.     Based on my knowledge, training and experience and the facts set forth in this

affidavit, I have probable cause to believe that, beginning by at least November 2013 and

continuing through at least September 2015, in violation of 18 U.S.C. § 371, WANG conspired

with Chan to commit securities fraud, to wit: to knowingly and willfully, by the use of means

and instrumentalities of interstate commerce, the mails and the facilities of a national securities

exchange, directly and indirectly, to use and employ manipulative and deceptive devices and

contrivances in connection with the purchase and sale of securities, to wit, shares of Pharm Co. 1

and Pharm Co. 2, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5,

by:  (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of

material facts and omitting to state material facts necessary in order to make the statements

made, in light of circumstances under which they were made, not misleading; and

(c) engaging in acts, practices and courses of business which would and did operate as a fraud

and deceit upon the purchase and seller, all in violation of Title 15, United States Code, Sections

78j(b) and 78ff(a), Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18,

United States Code, Section 2.

Sworn under the pains and penalties of
perjury.

David Cirilli
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
On February 6 , 2017

Donald L. Cabell
UNITED STATES MAGISTRATE JUDGE