UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO.: 16cr 10268 IT |
| ) | Conspiracy |
| ) | (18 U.S.C §371) |
| ) | Securities Fraud |
| v. ) | (15 U.S.C. §§ 78j(b) & 78ff; |
| ) | 17 C.F.R. § 240.10b-5) |
| ) | Aiding and Abetting |
| ) | (18 U.S.C. §2) |
| SCHULTZ CHAN ) | Aiding and Abetting |
| a.k.a. Jason Chan, ) | Criminal Forfeiture Allegation |
| SONGJIANG WANG ) | (18 U.S.C. §981(a)(1)(C) & 28 U.S.C. |
| ) | § 2461(c)) |
| Defendants. ) | |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

### Certain Relevant Persons and Entities

1. SCHULTZ CHAN, a.k.a. Jason Chan ("CHAN"), was a resident of Newton, Massachusetts. On or about August 17, 2015, CHAN began working as Director of Biostatistics at Akebia Therapeutics, Inc. ("Akebia").

2. SONGJIANG WANG, a.k.a. Sam Wang ("WANG") was a resident of Westford, Massachusetts. Beginning in or about December 2011, WANG began working as the Director of Statistical Programming for Merrimack Pharmaceuticals, Inc. ("Merrimack").

3. CHAN and WANG were personal friends.

1

4. Akebia, which is based in Cambridge, Massachusetts, is a biopharmaceutical company that develops products for patients with kidney disease. Akebia's shares are traded on the NASDAQ Stock Market, a national securities exchange, under the ticker symbol AKBA.

5. Merrimack, which is based in Cambridge, Massachusetts, is a biopharmaceutical company that develops products for cancer patients. Merrimack's shares are traded on the NASDAQ Stock Market under the ticker symbol MACK.

### General Allegations Regarding the Conspiracy Charged in Count One and the Scheme to Defraud

6. Beginning prior to November 2013 and continuing through at least September 2015, CHAN and WANG engaged in, and conspired to engage in, a scheme to obtain material nonpublic information from their respective employers, to share that information with each other, and to use that information for the purpose of trading in the securities of Akebia and Merrimack, in violation of duties of trust and confidence they owed their employers.

7. CHAN and WANG disclosed the material nonpublic information to each other with the understanding that they would each use the information for the purpose of trading in the securities of Akebia and Merrimack.

8. CHAN and WANG disclosed the material nonpublic information to each other because of their personal relationship as friends, and in furtherance thereof, and in exchange for financial benefits, including, in CHAN's case, the material nonpublic information WANG provided about Merrimack, and in WANG's case, the material nonpublic information CHAN provided about Akebia.

9. CHAN knew that WANG worked for Merrimack and WANG, likewise, knew that CHAN worked for Akebia.

10. CHAN knew that WANG's disclosure of material nonpublic information about Merrimack was in violation of the duties of trust and confidence WANG owed that company. WANG likewise knew that CHAN's disclosure of material nonpublic information about Akebia was in violation of the duties of trust and confidence that CHAN owed that company.

11. On various dates on or about and between August 19, 2015 and August 21, 2015, CHAN personally purchased shares in Akebia while in possession of material nonpublic information

*Background on the Material Nonpublic Information*

12. Before a pharmaceutical company can release a new drug, it must conduct clinical trials to determine whether the drug is safe and effective in providing treatment to patients. These trials generally are conducted in multiple phases. In Phase 1, the drug is typically tested on a small group of people to determine, among other things, its safety and a safe dosage range. In Phase 2, the drug is typically given to a larger group of people to determine if it is effective and to further evaluate its safety. In Phase 3, the drug is typically given to large groups of people to confirm, among other things, its effectiveness, its safety and to monitor any side effects.

*Merrimack Public Announcements*

13. On or about November 26, 2013, Merrimack announced positive Phase 2 trial results for one of its drug candidates ("Merrimack November 26 Announcement").

14. On or about December 13, 2013, Merrimack announced positive Phase 1 trial results for another one of its drug candidates and further announced that, in light of the positive Phase 1 results, the company was planning a Phase 2 trial for the drug ("Merrimack December 13 Announcement").

15. On or about May 1, 2014, Merrimack announced positive Phase 3 study results for a third drug candidate ("Merrimack May 1 Announcement"). On the day after the public announcement, Merrimack's share price increased 59%, from a closing price of $4.39 on April 30 to a closing price of $11.36 on May 1.

16. In his position as Director of Statistical Programming, WANG had access to a restricted database that collected clinical trial data, including but not limited to data related to the Merrimack November 26, December 13 and May 1 Announcements.

17. As an employee of Merrimack, WANG was subject to an insider trading policy, which provided that no employee was permitted to trade the company's stock while in possession of material nonpublic information, and that no employee was permitted to disclose material nonpublic information to others who might buy or sell the company's securities on the basis of that information.

*Akebia's Public Announcement*

18. On September 8, 2015, Akebia announced positive Phase 2 results for a new drug ("Akebia September 8 Announcement"). On September 9, the day after the public announcement, Akebia's share price increased 45%, from a closing price of $7.81 on September 8, to a closing price of $11.36 on September 9.

19. Chan had access to, and was aware of, the Phase 2 results before the Akebia September 8 Announcement.

20. As an employee of Akebia, Chan was subject to an insider trading policy, which provided that no employee was permitted to trade the company's stock while in possession of material nonpublic information, and that no employee was permitted to disclose material nonpublic information to others who might buy or sell securities on the basis of that information.

4

21.    On or about and between August 19, 2015 and August 21, 2015, in advance of the Akebia September 8 Announcement and while in possession of material nonpublic information, CHAN purchased shares of Akebia for himself.

### Objective of the Conspiracy and the Fraud Scheme

22.    The principal objective of the conspiracy and the fraud scheme was to make money trading in the securities of Merrimack and Akebia on the basis of material nonpublic information CHAN and WANG obtained from their respective employers.

### Manner and Means

23.    Among the manner and means by which CHAN and WANG carried out the conspiracy and the fraud scheme was the following:

   a.    In advance of Merrimack's November 26, December 13 and May 1 announcements, WANG provided CHAN with material nonpublic information about the clinical trials discussed in those announcements.

   b.    CHAN purchased shares in Merrimack while in possession of the material nonpublic information WANG provided.

   c.    In advance of the Akebia September 8 Announcement, CHAN provided WANG with material nonpublic information regarding the clinical trial discussed in that announcement.

   d.    WANG purchased shares in Akebia while in possession of the material nonpublic information CHAN provided.

### Overt Acts in Furtherance of the Conspiracy and the Fraud Scheme

24. On various dates on or about and between November 2013 and September 2015, CHAN and WANG committed the following overt acts, among others, in furtherance of the conspiracy and to accomplish its objectives:

a. On or about November 19 and November 21, 2013, less than one week before the Merrimack November 26 Announcement, CHAN purchased shares of Merrimack.

b. On various dates on or about and between December 3, 2013 and December 11, 2013, in the two weeks leading up to the Merrimack December 13 Announcement, Chan purchased shares of Merrimack.

c. On or about November 21, 2013 and December 2, 2013, WANG made cash withdrawals of $4,000 and $6,000, respectively, from a checking account in his name.

d. On or about December 3, CHAN deposited $10,000 in cash into a checking account in his name, then transferred money into a newly opened brokerage account in his name (the "New Brokerage Account"), and used those shares to purchase shares of Merrimack prior to the Merrimack December 13, 2013 Announcement.

e. On or about December 5, 2013, WANG withdrew $13,000 in cash from a checking account in his name.

f. On or about December 6, CHAN deposited $12,000 in cash into a checking account in his name, then transferred money from his checking account into the New Brokerage Account and used those proceeds to purchase additional shares of Merrimack prior to the Merrimack December 13 Announcement.

g.     On or about February 25, 2014 and February 26, 2014, WANG made cash withdrawals of $6,000 and $7,000, respectively, from checking accounts in his name. On or about February 27, 2014, CHAN deposited $19,800 in cash into his bank account and then transferred that money into the New Brokerage Account.

h.     On various dates on or about and between February 3, 2014 and April 28, 2014, CHAN purchased more shares of Merrimack, including purchases made with the cash deposited into CHAN's bank account on or about February 27, 2014.

i.     In or about March 2015, CHAN subsequently sold some of the Merrimack shares he had purchased in the New Brokerage Account, wired the funds to his bank account, and then wrote a check to WANG.

j.     On or about August 28, 2015, CHAN and WANG exchanged text messages.

k.     On or about the same day, WANG purchased Akebia call-options—which gave him the right, but not the obligation, to purchase Akebia shares at a later date for a specific price and thereby to profit from an increase in share price—and sold Akebia put options, which similarly allowed him to profit from an increase in the price of Akebia's shares.

l.     On various dates on or about and between August 28, 2015 and September 4, 2015, WANG purchased shares of Akebia.

## COUNT ONE
### (Conspiracy To Commit Securities Fraud)

25. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 24 of this Superseding Indictment and further charges that:

26. Beginning no later than November 2013 and continuing through at least September 2015, in the District of Massachusetts and elsewhere, the defendants,

> (1) SCHULTZ CHAN, a.k.a. Jason Chan, and
> (2) SONGJIANG WANG, a.k.a. Sam Wang

together with others known and unknown to the Grand Jury, conspired to commit offenses against the United States, to wit, knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities registered on a national securities exchange, to wit, shares of Merrimack Pharmaceuticals, Inc. and Akebia Therapeutics, Inc., in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

27. The objectives, manner and means, and overt acts taken in furtherance of the conspiracy charged herein are set forth in paragraphs 22 through 24 above.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Securities Fraud)

28. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 24 of this Superseding Indictment and further charges that:

29. In or about April 2014, in the District of Massachusetts and elsewhere, the defendants,

> (1) SCHULTZ CHAN, a.k.a. Jason Chan, and
> (2) SONGJIANG WANG, a.k.a. Sam Wang

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit, in connection with CHAN's purchase and sale of shares of Merrimack Pharmaceuticals, Inc., specifically by willfully engaging in a scheme to trade in Merrimack securities while in possession of material, nonpublic information WANG obtained from Merrimack and provided to CHAN.

All in violation of Title 15, United States Code, Sections 78j(b) & 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

## COUNT THREE
## (Securities Fraud)

30.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 24 of this Superseding Indictment and further charges that:

31.     In or about and between August 2015 and September 2015, in the District of Massachusetts and elsewhere, the defendants,

>    (1) SCHULTZ CHAN, a.k.a., Jason Chan, and
>    (2) SONGJIANG WANG, a.k.a. Sam Wang

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit, in connection with WANG's purchase and sale of shares of Akebia Therapeutics, Inc., specifically, by willfully engaging in a scheme to trade in Akebia securities while in possession of material, nonpublic information CHAN obtained from Akebia and provided to WANG.

All in violation of Title 15, United States Code, Sections 78j(b) & 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

## COUNT FOUR
### (Securities Fraud)

32. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 24 of this Indictment and further charges that:

33. In or about August 2015, in the District of Massachusetts and elsewhere, the defendant,

(1) SCHULTZ CHAN, a.k.a., Jason Chan

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme and artifice to defraud, (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading, and (c) engage in acts, practices and a course of business which would and did operate as a fraud and deceit, in connection with the purchase and sale of shares of Akebia Therapeutics, Inc., specifically, by willfully engaging in a scheme to trade in Akebia securities while in possession of material, nonpublic information CHAN obtained from Akebia.

All in violation of Title 15, United States Code, Sections 78j(b) & 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5.

## CRIMINAL FORFEITURE ALLEGATIONS

The Grand Jury further finds probable cause to believe that:

34. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Sections 78j(b) & 78ff(a) set forth in Counts One through Four of this Indictment,

>  (1) SCHULTZ CHAN, a.k.a. Jason Chan, and
>  (2) SONGJIANG WANG

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, jointly and severally as to Counts One through Four, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

35. If any of the property described in Paragraph 34 as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission by the defendant --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of this Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in Paragraph 34 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
SARAH E. WALTERS
STEPHEN E. FRANK
Assistant U.S. Attorneys

DISTRICT OF MASSACHUSETTS, March 28, 2017
Returned into the District Court by the Grand Jury Foreperson and filed.

_____ @ 1:39 PM
DEPUTY CLERK

15